This case will. be sufficiently understood from the opinion delivered in the Court of Appeals, by
O’Neall, J.
There are two objections taken to the complainant’s recovery, 1st. That two distinct and separate causes of action, and in which the complainants have separate interests, have been joined in the bill. 2d. That, for the cases stated in the bill, the complainants have plain and adequate remedy at law.
It appears, that complainant, Murray, and defendant, Stevens, agreed in writing, to plant a tract of land belonging to the former, for the year 1828, each furnishing a certain number of *206 hands, and specific farming tools, and to divide the crop in certain shares. After the crop was made, the provision crop was divided, and Murray’s share of the cotton set apart for him, but was retained by Stevens, until some demands, which he had against Murray, were satisfied. Afterwards it appeared, that Lacy, the other complainant, who is an infant, had some interest in the land, and the defendant, pretending to be his guardian, retained possession, and an actual division of the land was made by the complainants according to an arrangement between Murray, and Stevens acting for Lacy, in which one-half was assigned to Lacy; notwithstanding which, Stevens still retains possession. The bill seeks, 1st, a recovery of complainant Murray’s share of the crop of 1828, and 2nd, that the defendant should give up possession of the land and account for its rents and profits since. To this bill the defendant demurred, and for causes of demurrer assigned the same which are now the subject of appeal. The demurrer was heard, and overruled by Chancellor DeSaussuhe. The defendant afterwards filed a plea and answer: and the case was heard before Chancellor Johnston, who decreed for the complainants. The defendant appeals and moves for a reversal of the decrees on the grounds which I have stated.
1. The rule is stated with great clearness in Cooper’s Equity Pleadings, 182, to be that, “the Court will not permit several plaintifis to demand by one bill, several matters perfectly distinct and unconnected, against one defendant; nor one plaintiff to demand several matters of distinct- natures against several defendants, which is termed multifariousness or improperly confounding together distinct matters.” The same rule, though not so explicitly stated, is recognized in Mitf. Plead., 147. Under this rule, it is necessary to enquire, are the complainants’ claims separate, distinct, and unconnected 1 In the first place, Murray claims an account of a crop raised on shares, against the defendant, Stevens: this is his demand in his own right against Stevens : in the second place, he and Lacy claim possession of the land, and an account of its rents and profits as co-tenants- *207 The two matters of complaint are distinct and unconnected, and what is so much the worse, there is not even a community of right between the complainants extending to the whole case. The defendant is, I have no doubt, in the wrong, in both the cases stated ; but however much he may be in default, it constitutes no reason, why two specific wrongs, should be united in one bill, by two persons standing in unconnected rights, because they happen to have a common right in one of the causes of complaint.
2. This objection is the most formidable, if well founded, for it must defeat the complainants altogether, while the effect of the other might have been obviated by an amendment striking out of the bill, one of the cases made, and proceeding upon the other alone.
The first case stated in the bill, is that of an agreement to plant on shares, and I suppose that this was thought to be a partnership, and that, therefore, it was properly cognizable in Equity. But it is not a partnership; it is an agreement that Stevens and his slaves should be paid out of the crop by a certain number of shares for their services for one year. It is the ordinary and familiar case of an overseer’s contract, the remedy upon which at law is perfectly plain and obvious. Stevens for any breach of this agreement had his action, and so has the complainant, Murray. If there had been any pretence that the quantity of the crop could not be ascertained, but by a discovery from the defendant, a bill for discovery as ancillary to the remedy at law might have been sustained. But after the quantum of the crop has been ascertained, and even the complainant’s share set apart for him, there is no ground whatever for equitable interference. After the complainant’s share of the cotton had been ascertained, and actually put into a house for him, if the defendant, on demand, had refused to deliver it, I see nothing to prevent a recovery in either trover or detinue.
The second case stated in the bill is, that defendant, without any title, is in possession of a tract of land belonging to the *208 complainants. An action of trespass to try title would dispossess him of the land, and compel him to pay rent by way of damages. There is no difficulty in the way of a recovery by both. Even Murray could, perhaps alone, recover, on shewing that defendant entered under the agreement to plant the land on shares, for 1828. But by both complainants joining in the action, there could not be any pretence of defence. The agreement between him and Stevens, to divide the land between the two complainants, Murray and Lacy, would be a recognition of the title of both ; and inasmuch as the division, made by Murray under that agreement, is not binding on the complainant, Lacy, both from the want of his assent to it in fact, and from his minority rendering him incapable of giving a legal assent to it, and is therefore no severance of their common interest, they can sue jointly; and on proof that the defendant is in possession, he must be legally regarded as a trespasser on the freehold of both.
It is true, as to Lacy, that the defendant’s pretence, that he was his guardian, might make him his trustee, and if he alone - was complaining against him, I might be disposed to sustain his bill. But when he has an undivided interest with another, as to whom the defendant holds in adverse possession, and as their joint remedy at law is perfectly plain and adequate, I think they must be referred to it.
It was insisted for the complainants, that no appeal lies from an interlocutory decree, and that the decree overruling the demurrer, was of this character: and the case of Robertson vs. Bingley, 1 McC. Ch. 351, was relied on as authority in support of this position. There is no doubt, that a decree overruling a ' demurrer is interlocutory, and that the party will not be prejudiced-by awaiting the final hearing. But I have as little doubt when the demurrer will, if sustained, end the case, that the party may appeal from the decree overruling it.
But it is a strange application of the rule, to insist, that a decree is interlocutory, and not the subject of appeal, until a final decree, and after a final decree, then to insist that the party *209 cannot make the objections which were disposed of by the interlocutory decree. Yet that would seem to be the effect of the objection now raised. The case has been finally heard, and a decree given for the complainants. The appeal from that decree brings up the whole case; and upon the propriety of the interlocutory, as well as the final decree, this Court is bound to give judgment. .
. It is ordered and decreed, that the decrees of Chancellors De-Saussure and JohnstoN be reversed, and the bill dismissed with costs.
Johnson, J., concurred'.

Bill dismissed.